**IT IS ORDERED as set forth below:**

**Date: November 1, 2018**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 15-58440-WLH |
| BAY CIRCLE PROPERTIES, LLC, and NILHAN DEVELOPERS, LLC, et al., | CHAPTER 11 |
| | JUDGE WENDY L. HAGENAU |
| Debtors. | |
| NILHAN DEVELOPERS, LLC, | |
| Plaintiff, | |
| v. | ADV. PROC. NO. 18-5193-WLH |
| WESTPLAN INVESTORS ACQUISITIONS, LLC and ACCENT CUMBERLAND APARTMENTS, LP, | |
| Defendants. | |

**ORDER GRANTING MOTION TO DISMISS**

This matter is before the Court on the Motion to Dismiss filed by Westplan Investors Acquisitions, LLC ("Westplan") and Accent Cumberland Apartments, LP ("Accent") (collectively, "Defendants") [Docket No. 4]. The Court has jurisdiction of this matter under 28

~ 1 ~

U.S.C. § 1334.  The Complaint alleges the matter is core, but the Motion to Dismiss raises the question of whether this is a core matter under 28 U.S.C. § 157.  Nevertheless, all parties have consented to the Court's entry of this Order as a final order without prejudice to Defendants' position the Court cannot enter any other final orders without their consent [Docket Nos. 8 and 9].

## FACTS

The Debtor filed its bankruptcy petition under Chapter 11 of the United States Bankruptcy Code on May 4, 2015 (Case No. 15-58443 which was jointly administered with Case No. 15-58440).  The Debtor's Schedules reflect it owned real estate including property located at 2800 and 2810 Spring Road, Smyrna, Georgia.  The property located at 2800 Spring Road is identified as a shopping center consisting of 1.56 acres ("2800 Spring Road").  The property identified as 2810 Spring Road is described as office suites consisting of three buildings on 7.14 acres ("2810 Spring Road"; together with 2800 Spring Road, the "Property").  The Property is located in the general vicinity of SunTrust Park, where the Atlanta Braves play.

Nilhan's Property was collateral for a loan made by Wells Fargo to affiliates of the Debtor and the Debtor's principal Chittranjan (Chuck) Thakkar and his wife, and guaranteed by the Debtor and other affiliates.  The threatened foreclosure by Wells Fargo on some of its collateral prompted the bankruptcy filing in 2015 of the Debtor and other affiliates.  After the bankruptcy case was filed, Wells Fargo, the Debtor and the other obligors entered into a settlement agreement approved by this Court. The settlement agreement required the full amount of the debt to Wells Fargo to be paid in full by April 30, 2017 and set various deadlines for interim payments.  In the settlement agreement, the parties agreed that the release price for the Property was $5.2 million.  If Wells Fargo was not paid in full by April 30, 2017, it could record deeds-in-lieu of foreclosure on the Debtor's Property and property of the other obligors without further hearing.  After the settlement

agreement was finalized and approved, Wells Fargo assigned its interest and claim to Bay Point Capital Partners, LP ("Bay Point").

In anticipation of this April 30, 2017 deadline, the Debtor filed a motion on April 11, 2017 [Case No. 15-58440, Docket No. 634] to sell the Property for $7 million to Westplan. The contract for sale called for certain adjustments to the purchase price. The Debtor asked the Court to authorize the sale to Westplan free and clear of any liens pursuant to 11 U.S.C. § 363. Attached to the motion was a "Standard Form Contract of Sale" between Westplan and the Debtor for the sale of the Property ("Contract"). The Debtor supplemented the motion on April 19, 2017 by including the site plan which was to have been attached to the Contract as an exhibit. The supplement to the motion also included an "Assignment of Standard Form Contract of Sale" representing that Westplan had assigned all of its rights and interests under the Contract to Accent as of April 6, 2017. Under this assignment, Accent assumed all of the obligations and liabilities of Westplan under the terms of the Contract. Included in the Contract is paragraph 26 entitled "Buy Back". This paragraph states as follows in its entirety:

> 26.    BUY BACK.  Seller acknowledges that Purchaser intends to apply to rezone the Property to allow the development of a multi-use project on the Property and, as part of such rezoning, the Purchaser will obtain annexation into the City of Smyrna.  After Closing, the Seller shall have the right to purchase a portion of the Property utilized for the proposed hotel, office and retail (as shown on the rezoning/annexation site plan attached and incorporated *(sic)* herein as Exhibit B) ("HOR Property") for **$2,500,00.00**  Seller's right to purchase the HOR Property shall be valid for sixty (60) days from the date of final rezoning and annexation.  Purchaser shall deliver notice to Seller of such final rezoning and annexation.  If Seller fails to close and acquire the HOR Property within such sixty (60) day period, then Seller's right shall be null and void and Seller shall no longer have such right.  If Seller acquires the HOR Property, Seller and Purchaser shall enter into joint development and master site agreement addressing common development issues, such as construction costs, easements and maintenance costs.  The rezoning and annexation shall provide the guidelines and framework for the joint development and master site agreement as determined by the Purchaser.  The joint development and master site agreement shall designate the proportionate share of costs and expenses for each party based upon acreage within the proposed multi-

> use project, such costs and expenses shall include but not be limited to, those costs associated with engineering, architectural, geotechnical, oversight, developing, grading and infrastructure (such as stormwater, driveways, utilities and parking). The parties agree that such common development costs and expenses shall be escrowed at the closing of the HOR Property. Purchaser shall have the right to determine the contractors and service providers for the multi-family project.
>
> Further, if after Closing Purchaser is denied rezoning and annexation by the applicable authorities, Seller shall have the right to purchase the Property for $7,750,000.00 plus costs and expenses set forth in the second paragraph of Section 7, as well as interest at a rate of fifteen percent (15%) compounded annually from the date of Closing. Seller's right to purchase the Property shall be valid for ninety (90) days from the date Purchaser was denied the rezoning and annexation. Purchaser shall deliver notice to Seller of the denial of the rezoning and annexation. If Seller fails to close and acquire the Property within such ninety (90) day period, then Seller's right shall be null and void and Seller shall no longer have such right.

Bay Point objected to the proposed sale as did another major creditor.

The Court held hearings on April 24, 2017 and April 27, 2017 on the motion to sell to the Defendants as well as on several other motions filed by the Debtor and its affiliates in contemplation of the April 30, 2017 deadline to pay Bay Point in full. The Court heard testimony from a representative from the Defendants and from Mr. Thakkar regarding the proposed sale, the proposed rezoning of the Property, and the potential Buy Back provision. The Court also heard testimony from a developer of hotel properties regarding the potential value of the Buy Back provision.

Because Bay Point wanted to exercise its right to credit bid on the sale to the Defendants, the Court allowed an auction to be conducted during the hearing. Ultimately, Bay Point offered to pay $7.3 million to the estate for the Property, but without the Buy Back option, while Westplan offered only $7.2 million to the estate including the Buy Back option. The Court was faced with deciding whether to grant the Debtor's motion to sell to Westplan or to deny the motion because Bay Point offered a greater value. The Court's analysis is explained in its oral ruling. The Court reviewed the claims filed in the Debtor's case, which were minimal. While typically the interests

~ 4 ~

of equity holders get little consideration in a bankruptcy case, where the value of the asset is sufficient to pay creditors in full and deliver value to the equity holders, the Court may consider the interests of the equity holders in making decisions.  The Court found that once the Property was rezoned to accommodate residential and hotel use, the Buy Back option could have a value of $1 million or more.  However, if the Property was not rezoned, the option likely had a zero value.  The Court stated, "The bidding suggests to me that it's [the Buy Back option] worth no more than $100,000".  The Court noted that the option was "clearly important to Mr. Thakkar", so the resolution was for Mr. Thakkar to pay the additional $100,000 so the estate and Bay Point would not be prejudiced, but the Debtor retained the Buy Back option set out in the Westplan proposal.  The Court entered an order on April 28, 2017.

The sale to Accent closed on May 1, 2017.  According to the Complaint, Accent applied for rezoning with Cobb County, but with a site plan that differed from that attached to the sale motion.  Accent did not consult with the Debtor or its principals in connection with the rezoning.  The Debtor contends that the changes to the site plan reduced the value of the hotel, office and retail portions of the Property which the Debtor had retained the option to repurchase if rezoning were approved.  The Debtor alleges that Accent intended to have the rezoning denied.  In fact, the rezoning request was denied.

## CLAIMS IN THE COMPLAINT

The Debtor claims first that Westplan and Accent breached the Contract because they failed to pursue the agreed-upon site plan for rezoning and instead made unilateral changes to it.  The Complaint alleges that these changes to the site plan were made willfully to sidestep the Defendants' obligations contained in the order approving the sale of the Property.  Second, the Debtor claims the Defendants breached their duties of good faith and fair dealing.  Third, the

Debtor alleged fraud in the inducement. It alleges the Defendants promised to pursue rezoning in a specific way to enhance the value of the Buy Back option, and that the Court and the Debtor relied upon these representations to their detriment. Finally, the Debtor sought attorney's fees and punitive damages from the Defendants.

The Motion to Dismiss claims that, even if these allegations are taken as true, the Complaint fails because Defendants had no contractual duty to pursue rezoning in any certain way and no obligation to include the Debtor in the rezoning process. Thus, the motion to dismiss asserts there was no breach of contract, no breach of a duty of good faith and fair dealing, and no fraud in the inducement.

## STANDARD FOR DISMISSAL

Defendants seek to dismiss the Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b), permits a defendant in an adversary proceeding to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). In determining whether a complaint states a claim upon which relief can be granted, the Court must accept as true the complaint's factual allegations. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Daewoo Motor America, Inc. v. General Motors Corp., 459 F.3d 1249, 1271 (11th Cir. 2006). The complaint must contain "sufficient factual matter…to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). It is not sufficient that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery", Twombly, 550 U.S. at 561, and the Court is permitted

"to reject a plaintiff's legal conclusions, labels, and unsupportable assertions of fact." Howell v. U.S. Foods (In re Bilbo), 2014 WL 689097, at *3 (Bankr. N.D. Ga. Feb. 5, 2014) (citing Ashcroft v. Iqbal, 556 U.S. at 678).

In this case, both the Debtor and the Defendants have submitted additional materials beyond the face of the Complaint. Attached to the Complaint as an exhibit is a copy of the unsigned Contract. Attached to the Motion to Dismiss is a copy of the same Contract, only signed, and a copy of the site plan which was attached to the Debtor's supplement to the motion to sell as the site plan intended to be the exhibit to the Contract. In the Debtor's response to the Motion to Dismiss, it attaches certain Westplan marketing materials and a site plan which was allegedly submitted to the zoning authorities. Finally, attached to Defendants' reply to the Debtor's response to the Motion to Dismiss is an excerpt of the transcript of the hearing held by the Court on April 27, 2017, the full version of which is a matter of record at Docket No. 735 in Case No. 15-58440.

Rule 12(d) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b) provides, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The Court, however, may consider documents outside of the Complaint without converting the motion to one for summary judgment if "the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); Howell v. Bank of America, N.A. (In re Dorsey), 497 B.R. 374, 381 (Bankr. N.D. Ga. 2013). By undisputed, courts are referring to whether the authenticity of a document is undisputed. Id. Authenticity can be undisputed when the matters are subject to judicial notice. Design Basics, LLC v. Campbellsport Building Supply, Inc., 99

F.Supp.3d 899, 917-18 (E.D. Wisc. 2015); <u>Dapeer v. Nutrogena Corporation</u>, 95 F.Supp.3d 1366, 1376 n.1 (S.D. Fla. 2015).  A matter is subject to judicial notice when it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Even if a matter is not one considered to be within the scope of the complaint as described above, the court nevertheless retains discretion as to whether to take cognizance of any supplementary materials. <u>Jet One Center, Inc. v. City of Naples Airport Authority (In re Jet One Center, Inc.)</u>, 319 B.R. 11, 16 (Bankr. M.D. Fla. 2004); <u>Takada v. Libertyville Imaging Associates</u>, 2015 WL 5513554 at *3 (Bankr. N.D. Ill. Sept. 17, 2015); <u>Hagerman vs. Cobb County</u>, 2008 WL 839803 at *3 (N.D. Ga., March 28, 2008).

The Court finds that the unsigned contract attached to the Complaint, the signed contract attached to the Motion to Dismiss, and the site plan attached to the Motion to Dismiss are not supplementary materials but rather documents central to the Plaintiff's claim and undisputed.  The Court similarly finds that the full transcript of the April 27, 2017 hearing appearing on the Court's docket at number 735 in Case No. 15-58440 is not a supplementary material.  The Court will consider the foregoing documents.  The Court notes that the transcript, the unsigned contract, and the site plan are all matters of record in the main bankruptcy case, Number 15-58440.  The Debtor has not disputed that the signed Contract attached to the Motion to Dismiss is authentic.  Each of these four materials is central to the Plaintiff's claim since they are copies of the contract approved by the Court, the site plan submitted to the Court as part of the approval process, and the transcript of the Court's approval of the sale, all of which are attacked by the Debtor in its Complaint.  The Court will exercise its discretion and not take cognizance of the Westplan marketing materials and site plan submitted for rezoning attached to the Plaintiff's response.  The Defendants object to the

authenticity of each of the foregoing. Moreover, the documents allegedly support the Debtor's allegations that the plan submitted to the zoning authorities was different than that submitted to the Bankruptcy Court and on which the Debtor allegedly relied. But, when considering a motion to dismiss, the Court already takes those allegations of the Debtor as true. Thus, there is no need for the Court to review the proposed marketing materials or submitted site plan.

## BREACH OF CONTRACT

The Debtor alleges that the Defendants breached the Contract by failing to pursue "the agreed upon site plan" in their efforts to rezone and annex the Property with the City of Smyrna. The Debtor also alleges that the Defendants unilaterally made changes to this alleged agreed upon site plan that would be detrimental to the Debtor if the zoning were obtained on this modified plan. Analysis of the Debtor's Complaint begins with an analysis of the Contract.

The first step for a court construing a contract governed by Georgia law (as this one is) is to "decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." Schwartz v. Harris Waste Management Group, 237 Ga. App. 656, 660 (1999); Marvel Enterprises, Inc. v. World Wrestling Federation Entertainment, Inc., 271 Ga. App. 607, 610 (2005). Paragraph 26 of the Contract states, "Seller acknowledges that Purchaser intends to apply to rezone the Property to allow the development of a multi-use project on the Property and, as part of such rezoning, the Purchaser will obtain annexation into the City of Smyrna." This sentence does not require the Purchaser to apply for rezoning of the Property, much less require that rezoning be undertaken according to any particular method other than to include annexation into the City of Smyrna. It merely recites the intent of the Purchaser to rezone the Property. The remainder of paragraph 26 addresses the right of the Debtor to buy back all or a portion of the Property in the event the

~ 9 ~

Property is rezoned or rezoning is rejected. The Complaint alleges that the Purchaser did apply to rezone the Property and did apply for annexation into the City of Smyrna. It is undisputed, then, that the Defendants did not violate the first sentence of paragraph 26.

The next sentence of the paragraph states as follows: "After Closing, the Seller shall have the right to purchase a portion of the Property utilized for the proposed hotel, office and retail (as shown on the rezoning/annexation site plan attached and incorporated herein as Exhibit B) ("HOR Property") for $2.5 million." This right could be exercised within 60 days from the date of final rezoning and annexation. The site plan referenced in the Contract is attached for purposes of identifying the portions of the Property which are subject to the Buy Back option. Nowhere in paragraph 26 is the Purchaser required to obtain zoning in any particular way. The Court can anticipate that if the Purchaser had obtained zoning in a way materially different from the site plan, issues might arise as to which portions of the Property the Debtor had the right to repurchase. However, the Complaint alleges that zoning and annexation were denied; thus, this issue does not arise. Rather, because the zoning and annexation were denied, the Debtor's Buy Back option was to repurchase the entire Property for $7,750,000 plus costs, expenses and interest.[1]

The Debtor also alleges that the Defendants breached the Contract because they failed to cooperate with the Debtor or consult with the Debtor in connection with the site plan submitted to the zoning commission. Referring to the Contract, though, there was no requirement that the Purchaser cooperate with or coordinate with the Debtor in connection with the zoning submissions. Even if the zoning and annexation had been successful, the Contract provides, "The rezoning and annexation shall provide the guidelines and framework for the joint development and master site

---

[1] In the Defendants' Motion to Dismiss, they allege the Debtor exercised the option to repurchase the Property in its entirety. The Bankruptcy Docket does not reflect that the Debtor sought authority from the Bankruptcy Court to exercise the option, to borrow money with which to exercise the option, or to assign the option to a third party to exercise. The Debtor has acknowledged to the Court in a separate hearing that the repurchase occurred.

agreement as determined by the Purchaser." The obligations of which the Debtor complains simply do not exist. The Contract contemplates the Purchaser will apply for rezoning and it contemplates the option for the Debtor to repurchase all or a portion of the Property if the zoning is or is not successful. Ultimately, the rezoning was not successful and the Debtor's right to repurchase the Property in total was unaffected.

Moreover, the Contract includes a merger clause in paragraph 19. It states, "This Contract contains the entire agreement of the parties hereto with respect to the subject matter hereof, and no representations, inducements, promises or agreements, oral or otherwise, not expressly set forth herein, shall be of any force or effect. No amendment to this Contract and no waiver of any right hereunder shall be binding upon any party hereto unless such amendment or waiver is in writing and is signed by the parties hereto." Under Georgia law, parole evidence of prior or contemporary representations is generally inadmissible to add to, take from or vary a written instrument. See Watson v. Zurich-American Insurance Co., 221 Ga. App. 4, 5-6 (1996). The language contained in the Contract satisfies the requirements for a merger clause under Georgia law. In the case of Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc., 262 Ga. App. 826 (2003), the court relied on the Georgia Supreme Court decision of First Data POS v. Willis, 273 Ga. 792 (2001) in reviewing a merger clause. The court noted that a standard merger clause is: "The Agreement … constitutes the entire agreement between the parties with respect to the subject matter contained herein and supersedes all prior agreements and understandings, both oral and written by and between the parties hereto with respect to the subject matter hereof." Authentic Architectural Millworks, 262 Ga. App. at 829-30. In that case, the court specifically looked for words such as "representations not included in this contract [are] not binding". Id. The merger clause in the Contract satisfies the requirements of a merger clause in Georgia. It provides that the

~ 11 ~

Contract is the entire agreement and specifically states, "No representations, inducements, promises or agreements … not expressly set forth herein, shall be of any force or effect."  A merger clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement."  Herman Homes, Inc. v. Smith, 249 Ga. App. 131, 133 (2001).

Because the merger clause establishes that only the agreements exhibited in the Contract are part of the Contract, and because the Contract did not require Defendants to submit a particular form of site plan for rezoning or require the Defendants to collaborate with the Debtor in connection with the rezoning, the allegations that the Defendants breached the Contract do not state a claim and the claim should be dismissed.

## GOOD FAITH AND FAIR DEALING

Next, the Debtor contends that the Defendants breached the implied covenant of good faith and fair dealing by failing to submit an agreed-upon site plan, by failing to "work diligently in good faith to obtain approval of the rezoning and annexation" that was contemplated in the agreement, and "by failing to work in good faith to preserve the value recognized by this Court of the repurchase options."  In the Motion to Dismiss, the Defendants contend the allegations do not state a claim because there was no obligation in the Contract to submit a specific site plan, to include the Debtor in the planning involving the site plan, or even to obtain rezoning and annexation.

The implied covenant of good faith and fair dealing in performing a contract has a basis in both statutory and common law.  Stuart Enters. Int'l, Inc. v. Peykan, Inc., 252 Ga. App. 231, 233 (2001).  The Uniform Commercial Code establishes a duty of good faith in performance for contracts governed thereunder, and there is a general statutory requirement to perform substantially

within the spirit and letter of a contract. O.C.G.A. § 11-1-304; § 13-4-20; Flynn v. Gold Kist, Inc., 181 Ga. App. 637 (1987). There is also a common law duty to diligently and in good faith seek to comply with all portions of the terms of a contract. See Brack v. Brownlee, 246 Ga. 818 (1980).

In contracts governed by the UCC, the failure to act in good faith in performing a contract does not create an independent cause of action. See Greenwald v. Columbus Bank & Tr., 228 Ga. App. 527, 530 (1997); Lake Tightsqueeze, Inc. v. Chrysler First Fin. Svcs. Corp., 210 Ga. App. 178, 181 (1993). Likewise, the common law requirement of good faith and fair dealing in the performance of a contract does *not* create an independent cause of action apart from breach of contract. As the Georgia Court of Appeals has explained, "[t]he implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract." Stuart, 252 Ga. App. at 234; *see also* Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990) (ruling an implied covenant of good faith is not an independent, actionable contract term under Georgia law). Thus, an allegation of breach of good faith *must* be related to a provision of the contract. See Tart v. IMV Energy Sys. of Am., Inc., 374 F. Supp. 2d 1172, 1182 (N.D. Ga. 2005); *see also* OnBrand Media v. Codex Consulting, Inc., 301 Ga. App. 141, 147-48 (2009).

For example, in Sheppard v. Bank of Am., NA, 542 F. App'x 789, 792-93 (11th Cir. 2013), the court found that the plaintiff failed to state a plausible claim for relief for breach of contract and, accordingly, for breach of the implied covenant of good faith and fair dealing. The court explained that the elements of a breach of contract claim in Georgia are: (1) the breach and (2) the resultant damages (3) to the party who has the right to complain about the contract being broken. Id. (citing UWork.com, Inc. v. Paragon Techs., Inc., 321 Ga. App. 584, 590 (2013). The court found the plaintiff had not explicitly pled a claim for breach of contract. The court noted the

~ 13 ~

complaint contained nothing more than "a statement of facts that merely creates a suspicion of a legally cognizable right of action." Sheppard, 542 F.App'x at 793. The court explained that absent a specific, actionable breach of contract claim, a claim for breach of the implied duty of good faith must fail. The court concluded that, because the plaintiff failed to allege a plausible claim for breach of contract, the plaintiff also failed to state a claim for breach of the implied covenant of good faith. Id.

As discussed above, the allegations of the Debtor are not supported by the terms of the Contract. The Contract did not require the Defendants to obtain the rezoning and annexation, did not require that any rezoning and annexation use a particular site plan, nor require that the Debtor be involved or consulted in connection with the rezoning application. Absent a specific, actionable breach of contract claim, the Debtor's claim for breach of the implied duty of good faith and fair dealing fails and Count II of the Complaint should be dismissed.

**FRAUD IN THE INDUCEMENT**

In Count III of the Complaint, the Debtor alleges the Defendants fraudulently induced the Debtor to enter into the Contract and this Court to approve the sale of the Property. The Complaint alleges the Defendants represented to the Debtor and to the Court that they would "diligently and in good faith" pursue rezoning and annexation of the Property "adding value to the repurchase option". The Complaint then alleges that the Defendants submitted a different site plan for purposes of rezoning without the consent of or cooperation with the Debtor. The Complaint alleges that the Debtor and the Court relied upon the "agreed upon site plan and the potential value … to the bankruptcy estate created by the Buyback Option" in approving the sale. It further alleges that the reliance was to the detriment of the Court and the Debtor.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." Ainsworth v. Perreault, 254 Ga. App. 470, 471 (2002) (cites omitted); Donchi, Inc. v. Robdol, LLC, 283 Ga. App. 161, 163 (2007).  Here, the Complaint only seeks damages for fraud and breach of contract, but does not seek to rescind the agreement.  The Debtor admits in its response to the Motion to Dismiss that it tried to rescind the Contract but did not do so because rescission would have necessitated undoing a sale approved by the Bankruptcy Court and obtaining the dollars paid to Bay Point.  There is no dispute, therefore, that the Contract was not rescinded.  Such was the case in Ainsworth.

Also, as in Ainsworth, the Contract includes a merger clause which prohibits recovery for representations made outside the Contract.  Where a party to a contract affirms the agreement and the agreement contains a merger or disclaimer provision, the merger clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." Ainsworth, 254 Ga. App. at 472 (cites omitted).  The contracting party is "estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail." Donchi, 283 Ga. App. at 163 (cites omitted).  Because the Contract has not been rescinded, the Debtor's fraud claim can only survive if it can show misrepresentations by the Defendants that are actually contained in the Contract.  See WirelessMD, Inc. v. Healthcare.com Corporation, 271 Ga. App. 461, 469-70 (2005).  As discussed above, the Defendants did not violate any representations or requirements of the Contract.  The Debtor's claim for fraud in the inducement therefore must fail.

The Debtor's Complaint also appears to allege that the Court was fraudulently induced into approving the sale of the Contract.  The Complaint, however, does not ask the Court to set aside

the sale or reconsider its order approving the sale. Such a measure would require specific pleading under 11 U.S.C. § 363(n) or under Fed. R. Civ. P. 60 made applicable to adversary proceedings by Fed. R. Bankr. P. 9024. The Debtor has therefore pled no grounds on which a claim of fraudulent inducement to the Court could be sustained.[2]

For the foregoing reasons, the Debtor's allegations regarding fraud in the inducement do not state a claim and will be dismissed.

## ATTORNEY'S FEES AND PUNITIVE DAMAGES

Finally, the Debtor alleges that the Defendants are liable for attorney's fees and punitive damages. Where a complaint fails to state a claim, the related claims for attorney's fees and punitive damages are also subject to dismissal. *See e.g.,* Owens v. Bank of Am. N.A., 2015 WL 12507425 *8 (N.D.Ga. Dec. 4, 2015); Puissant v. Bank of Am. Home Loan Serv., 2013 WL 6383102 at *6 (M.D.Ga. Dec. 5, 2013) (granting defendant's motion for judgment on the pleadings where the amended complaint failed to state a claim for wrongful foreclosure and, accordingly, for

---

[2] Moreover, the Court reviewed the transcript of the hearing on April 27, 2017, at which it approved the sale. This transcript confirms that the Court was not mislead. The Purchaser's representative, Bradley Johnson, represented that the Purchaser would seek rezoning of the Property, but made it clear that rezoning and annexation were not guaranteed. Mr. Johnson also made it clear that neither the Debtor nor the Debtor's principal would be involved in the rezoning process. Mr. Johnson testified that his goal in this Contract was to "rework a deal with the Debtor where we had total control of the zoning process." Transcript, pg. 52. After further questioning about whether the Debtor could interfere with the zoning process, Mr. Johnson stated, "Well, at this point, we own the Property. We control the Property." Transcript, pg. 53. He then went further to acknowledge that he could not control what anyone else would do but did believe that no one else would "have the right to" interfere with the zoning process because the Defendants were the owners of the Property.

In neither its oral ruling nor written order did the Court fix the value of the Buy Back option. Specifically, the Court found that the value of the Buy Back option was not $1 million as of that point in time because the testimony was that it could be worth as much as $1 million if the rezoning were obtained. What the Court concluded was that if Mr. Thakkar individually was interested in the Debtor preserving the Buy Back option, Mr. Thakkar could pay an additional $100,000 to make the two bids under consideration by the Court equivalent. At that point, the Court was evaluating two bids of $7.3 million to the estate. Assuming Bay Point would be paid in full, the equity interest in the Debtor had the potential to receive excess cash or value in the Debtor, and it was appropriate for the Court to consider the potential equity interest in choosing between the two contracts. Thus, the Court honored the Debtor's choice of the Defendants' Contract which preserved the possibility of value in the future if the rezoning were successful. It is simply not accurate for the Debtor to allege that the Court relied upon any specific representation of the Defendants or any specific value that would be obtained in the Buy Back option as part of the process of approving the Contract.

attorney's fees and punitive damages); McFarland v. BAC Home Loans Servicing, L.P., 2012 WL 2205566 *4 (N.D.Ga. June 14, 2012) ("Because the Complaint fails to state a claim, Plaintiff is not entitled to any other legal or equitable relief).

Because the Debtor fails to state a plausible claim for breach of contract, breach of the duty of good faith and fair dealing, or fraud in the inducement, the related claims for attorney's fees and punitive damages also fail.

### CONCLUSION

For the reasons stated above, the Court finds that even taking the Debtor's allegations as true, the Complaint fails to state a claim upon which relief can be granted and is hereby DISMISSED under Fed. R. Civ. P. 12(b)(6) made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b).

### ### END OF ORDER ###

**DISTRIBUTION LIST**

Roberto Bazzani
Weener & Nathan, LLP
Suite 275
5887 Glenridge Drive
Atlanta, GA 30328

Michelle L. Wein
Cohan Law Group, LLC
Suite 2570
3340 Peachtree Road NE
Atlanta, GA 30326